Jerry Lee ALSTON, Jr., Plaintiff,

v.

Donald B. RICE, Secretary Department of the Air Force, Defendant.

Civ. A. No. 92–210–RRM.

United States District Court, D. Delaware.

June 28, 1993.

William S. Hudson, and David C. Gagne, Hudson, Jones, Jaywork, Williams and Liguori, Dover, DE, for plaintiff.

Nina A. Pala, U.S. Atty.'s Office, Wilmington, DE, Lt. Colonel Norman F. Nivens, and Lt. Colonel Larry E. Funk, U.S. Air Force, Arlington, VA, for defendant.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a Title VII case. The plaintiff, Jerry Lee Alston, a black male, is a former employee of the Department of the Air Force at Dover Air Force Base, Delaware ("Dover AFB"). The defendant is the Secretary of the Department of the Air Force Donald B. Rice (hereinafter referred to as the "Air Force"). In his *pro se* complaint, the plaintiff asserts a host of claims against the Air Force. The following two claims comprise the crux of the plaintiff's complaint: (1) the Air Force discriminated against him on the basis of his race, color, and sex by terminating him from his position as a Motor Vehicle Operator for the Enlisted Open Mess Club at Dover AFB; and, (2) the Air Force terminated him in retaliation for engaging in protected activities. In his complaint, the plaintiff requests $7,000,000 in compensatory damages.

The Air Force has moved for summary judgment. This is the Court's decision on the motion.

## FACTS

For the purposes of this motion, the Court accepts the following facts as true, either because they are the version of the facts offered by the plaintiff or because they appear to be uncontradicted.

On September 21, 1990, the Air Force hired the plaintiff as a "flexible" employee and assigned him to be a Recreation Aide, Grade 2, at the Youth Activities Center

("YAC") at Dover AFB. The plaintiff worked for approximately seven months at the YAC under the supervision of Hilda Wendt. During this time, he served as Union Vice President of Local # 1709 American Federation of Government Employees ("AFGE").

In February of 1991, the plaintiff filed with the Air Force an informal complaint of discrimination against Ms. Wendt.

In early April of 1991, as she had observed the plaintiff exhibiting "erratic" behavior on the job, Ms. Wendt consulted Nancy Mills, Dover AFB's Human Resources Officer, and scheduled him for a medical examination. The plaintiff requested that he be examined by a doctor of his own choosing. Ms. Wendt denied this request and forced the plaintiff to see Dr. Anthony Smartnick, the Chief of the Counseling Center at Dover AFB hospital, or risk losing his job.

On April 12, 1991, Dr. Smartnick examined the plaintiff. He diagnosed him as having paranoid personality disorder; however, as the plaintiff refused personality testing and further interviews, Dr. Smartnick noted that his preliminary evaluation was "incomplete and its validity compromised."

Also on April 12, 1991, the plaintiff had a conversation with Ms. Mills. He contends that she convinced him that he could obtain a transfer and a promotion in return for withdrawing his complaint against Ms. Wendt. Thereafter, the plaintiff withdrew his complaint.

On April 23, 1991, the plaintiff applied for a position as a Motor Vehicle Operator, Grade 5. On April 29, 1991, the Air Force selected the plaintiff for a position as a Motor Vehicle Operator at the Enlisted Open Mess Club (the "Club"). In his new position, the plaintiff was primarily responsible for delivery of Club food to on-base locations.

Shortly after the plaintiff started working at the Club, his supervisor, David Griswold, began receiving customer complaints regarding the speed and accuracy of food deliveries. In his handwritten notes relating to the plaintiff's job performance, Mr. Griswold wrote that on May 4, 1991, he discussed with the plaintiff the importance of "fast delivery and organization" as he had received "8 phone calls complaining of slow and mixed up orders." *See* Appendix accompanying the defendant's Motion for Summary Judgment at 22. ("A-——").

Mr. Griswold also noted the plaintiff displayed a lack of respect and common courtesy toward other Club staff members. On May 22, 1991, Mr. Griswold explained to the plaintiff that he "was not going to talk to him anymore concerning his attitude towards members of [his] staff. We don't talk down to anyone nor do we yell or demand from anyone." A–25.

On May 23, 1991, the plaintiff attempted to file a grievance with Mr. Griswold relating to the operation of a fish tank he had donated for the Club's use. Mr. Griswold refused to accept the grievance and returned it to the plaintiff for him to file it with Mr. Griswold's supervisor.

On May 25, 1991, Mr. Griswold met with the plaintiff to discuss his "attitude towards the kitchen staff and his lack of quality performance on preparing for delivery service items." A–27.

On May 28, 1991, Mr. Griswold began an investigation into the plaintiff's work performance. During the investigation, he learned that in addition to service and attitude problems, the plaintiff had on one occasion conducted personal business during duty hours.

On May 30, 1991, Mr. Griswold terminated the plaintiff's employment effective May 31, 1991. In his letter of termination, Mr. Griswold wrote to the plaintiff:

Your attitude towards the members of my staff is totally unacceptable. You have talked down to, yelled at, and even threatened members of my staff on numerous occasions. This above all will never be tolerated in the Enlisted Club.

A–30.

Also on May 30, 1991, following receipt of the termination letter, the plaintiff filed with the Air Force several labor grievance forms and a hand-written memorandum captioned "Subject: EEO [Equal Employment Opportunity] Complaint Notification." As the plaintiff was a Union officer, the Air Force

was unsure whether the plaintiff was filing a Union grievance or an EEO claim of discrimination. Accordingly, on July 5, 1991, Sylvio Lecomte, an Air Force Attorney–Advisor, wrote the plaintiff and asked him to clarify which option he wished to pursue.

On July 12, 1991, the plaintiff responded by filing an initial EEO Report charging the Air Force with wrongfully terminating him on the basis of his race, color, and sex and in retaliation for engaging in protected activities.

On July 14, 1991, the plaintiff wrote his designated Air Force EEO counselor, Pat Arnett, with a list of 22 additional allegations against "management and union officials."

On July 31, 1991, Ms. Arnett notified the plaintiff that she had conducted her final counseling interview relating to his claim and advised him that he had the right to file a formal complaint of discrimination within fifteen calendar days after receipt of the Notice.

On August 8, 1991, the plaintiff filed with the Air Force a formal administrative complaint of discrimination.

On November 8, 1991, Virginia Welgan, the Air Force's Chief EEO Counselor wrote the plaintiff and requested that he clarify the twenty-two additional allegations set forth in his July 14, 1991 letter. Thereafter, the plaintiff responded by a letter in which he refused to clarify his allegations and accused Ms. Welgan of "racist behavior."

On November 19, 1991, a State of Delaware Department of Labor Appeals Referee held a hearing on a Claims Deputy's decision to deny the plaintiff unemployment benefits. At the hearing, Sylvio Lecomte represented the Air Force and the plaintiff appeared *pro se.* On December 20, 1991, the Appeals Referee issued an opinion reversing the Claims Deputy's decision and finding the plaintiff was entitled to unemployment benefits as the Air Force had not proved that he exhibited wilful or wanton misconduct during his employment.

On February 12, 1992, Ms. Welgan again wrote the plaintiff requesting clarification of his allegations. The plaintiff responded to the letter, but again refused to clarify his allegations to the Air Force's satisfaction.

On March 4, 1992, the Air Force issued its Notice of Final Agency Decision accepting the following two issues for formal investigation: (1) whether the Air Force discriminated against the plaintiff in terminating his employment; and, (2) whether the Air Force discriminated against the plaintiff in processing his administrative charge of discrimination.

On April 2, 1992, during the pendency of the Air Force's investigation, the plaintiff filed this Title VII action alleging a host of claims including, *inter alia:* (1) unlawful union-busting; (2) discriminatory reprisal; (3) discriminatory termination; (4) fraud by management officials; (5) conspiracy by Air Force EEO officers; and, (6) a violation of his right to privacy.

On August 28, 1992, the Air Force EEO Complaint Investigator issued a Report of Investigation recommending a finding of no discrimination as to each of the plaintiff's charges.

On October 5, 1992, the Air Force notified the plaintiff of its decision to concur with the EEO Complaint Investigator's recommendation.

On October 18, 1992, the plaintiff requested a hearing before the EEOC. On February 1, 1993, the EEOC remanded the request for a hearing for cancellation due to the pendency of this action.

On March 1, 1993, the Air Force moved for summary judgment.

On April 5, 1993, William S. Hudson entered his appearance on behalf of the plaintiff who had been presenting his case *pro se.*

On May 5, 1993, the Court held a status conference with counsel for the parties and ordered the plaintiff to file an answering brief in response to the defendant's pending motion for summary judgment.

On May 27, 1993, the plaintiff filed an answering brief in opposition to the defendant's motion. On June 10, 1993, the Air Force filed a reply and on June 15, 1993, the Court heard oral argument on the motion. At the oral argument, the Court allowed the

plaintiff to participate and speak to the facts he relied upon in asserting his claims.

## DISCUSSION

The Air Force has moved for summary judgment as to each of the plaintiff's claims. In his answering brief in opposition to the motion, the plaintiff contested the Air Force's arguments regarding only two claims asserted in his complaint: (1) that the Air Force terminated him for discriminatory reasons; and, (2) that the Air Force terminated him in retaliation for engaging in protected activity. As the plaintiff has not contested any of the Air Force's arguments relating to the remaining claims in the complaint, the Court finds the plaintiff has abandoned these claims and will address only the two claims the plaintiff is still pursuing.

■■■ Summary judgment is appropriate when the evidence offered demonstrates that there is no genuine issue of material fact in dispute and no jury could reasonably find by a preponderance of the evidence that the nonmoving party is entitled to judgment in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating a lack of a genuine issue of fact; accordingly, courts must read the record in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### 1. *Discriminatory termination*

■■■ To prevail on his discriminatory termination claim, the plaintiff must offer some proof of the defendant's alleged wrongful intent to discriminate against him. *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir.1987). Absent direct evidence of such intent, the plaintiff may prove intent through the framework established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Weldon v. Kraft Inc.*, 896 F.2d 793, 796 (3d Cir.1990). Under this framework, the plaintiff must first prove a *prima facie* case of discriminatory termination by a preponderance of the evidence. To meet this burden, the plaintiff must prove: (1) he is a minority; (2) he was qualified for the job from which he was discharged; and, (3) others not in the protected class were treated more favorably. *Id.* at 797. If the plaintiff successfully proves a *prima facie* case, he raises a presumption of unlawful discrimination. *Id.* The burden of production then shifts to the defendant to set forth a legitimate nondiscriminatory reason for terminating the plaintiff. *Id.* The ultimate burden of persuasion remains with the plaintiff who must then prove that the reasons proffered by the defendant are a pretext for discrimination. *Id.*

In this case, the plaintiff has not offered any direct evidence of the Air Force's alleged discriminatory intent. Instead, he seeks to rely on the *McDonnell Douglas* framework to raise an inference of discriminatory intent.

■■■ For the following reasons, the Court finds the plaintiff has failed to establish a *prima facie* case of discrimination. First, he has failed to show he was qualified for the job from which he was discharged. In considering this element of the *prima facie* case, the Court looks to whether the plaintiff was performing his job at a level that met his employer's legitimate expectations. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013–14 (1st Cir.1979). The handwritten notes of his supervisor, David Griswold, demonstrate the plaintiff was counseled several times regarding his failure to deliver food on time and his inappropriate attitude toward co-workers. Furthermore, Mr. Griswold testified at the plaintiff's unemployment benefits hearing that he terminated the plaintiff for "insubordination," "causing discontent amongst [his] staff," and "poor work performance."

Moreover, Mr. Griswold was not the only Air Force employee who had a negative impression of the plaintiff's work performance.

In an affidavit submitted to the Air Force EEO complaint investigator, Eric Curry, a chef at the Club, averred that:

> "[W]hen it came down to it [the plaintiff] couldn't do the work.... He worked in the kitchen with me about a month and it seemed like every day there was a new problem. He was always challenging something. He resented authority. He just wanted to do things his way."

A–50–51. Marcus Walley, Sr., an Operations Supervisor at the Club also submitted an affidavit to the EEO complaint investigator. In his affidavit, Mr. Walley noted that Mr. Griswold had good reason to fire the plaintiff because he had "no teamwork—no commitment—he didn't take pride in his job." A–53.

Additionally, in contrast to the abundant evidence that the plaintiff was not performing his job satisfactorily, there is no affirmative evidence that the plaintiff was performing his job satisfactorily.

■ Second, the plaintiff has failed to show others not in the protected class were treated more favorably. He argues the Air Force's treatment of Brian Cullen and Cathy Sullivan, two white employees, demonstrates the Air Force treats white employees substantially better than black employees: (1) Brian Cullen, a "regular" Air Force employee who worked at the Dover AFB golf course, was repeatedly insubordinate, but the Air Force never fired him; and, (2) Cathy Sullivan, a waitress at the Club who trained Mr. Alston for his new position, needed "a considerable amount of time to orient herself to her job," but the Air Force did not counsel her ·or terminate her employment. The Court finds this alleged evidence of disparate treatment insufficient as Mr. Cullen and Ms. Sullivan were not in employment situations comparable to that of the plaintiff. Unlike the plaintiff, Mr. Cullen was involved in only one incident of insubordination. In her deposition, Ms. Wendt testified that Mr. Cullen would have been terminated had he repeated his insubordinate act. Also, as a "regular" employee, Mr. Cullen was subject to different employment and performance procedures than was the plaintiff. As for Ms. Sullivan, the plaintiff has not offered any evidence that

she had any performance problems as an Air Force employee.

Even if the Court were to conclude the plaintiff had established a *prima facie* case of discrimination, the plaintiff's claim would fail. As the Air Force has come forward with legitimate nondiscriminatory reasons for terminating the plaintiff's employment (poor work performance and attitude problems), the plaintiff must show the proffered reasons are a pretext for discrimination. The plaintiff contends the following facts demonstrate the Air Force's reasons are pretextual: 1) he never received an "official" letter of reprimand; 2) Mr. Griswold's handwritten notes may not have been contemporaneously recorded; and 3) Ms. Mills, the Air Force's Human Resources Officer, testified at the plaintiff's unemployment benefits hearing that the plaintiff's termination was "not a performance based action." For the following reasons, the Court concludes the plaintiff has not identified facts or circumstances sufficient to establish an inference that the Air Force's proffered reasons for terminating the plaintiff's employment are unworthy of credence. *See Sorba v. Pennsylvania Drilling Company*, 821 F.2d 200, 205 (3d Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679· (1988).

■ First, the absence of "official" letters of reprimand in the plaintiff's employment file does not suggest the Air Force unlawfully discriminated against him. The Air Force does not have a policy requiring that "flexible" employees receive a letter of reprimand before they are terminated. Moreover, Mr. Griswold explained that the plaintiff did not receive an official reprimand because he was a "flexible employee" who had "done more than [he] should have been able to get away with doing."

■ Second, the plaintiff has offered only speculation that Mr. Griswold's handwritten notes relating to the plaintiff's work performance were written after the fact. The plaintiff has not provided a factual basis for this argument; nor has he disagreed with the substance of the conversations outlined in Mr. Griswold's· notes.

■ Third, Ms. Mills' testimony at the plaintiff's unemployment benefits hearing does not support the plaintiff's claim. At the hearing, she testified that the plaintiff's termination was "not a performance based action;" but rather a "disciplinary action." As Mr. Griswold had previously stated that he terminated the plaintiff because of his "poor work performance," the plaintiff argues Ms. Mills' testimony demonstrates the Air Force has changed its position on its reasons for terminating the plaintiff's employment. The Court finds the apparent conflict between Ms. Mills' testimony and Mr. Griswold's stated reason for firing the plaintiff is merely a matter of semantics and is not demonstrative of a shift in the Air Force's position. Whether she characterized the plaintiff's problems at work as discipline or performance related, Ms. Mills intended to convey the message that the plaintiff was not meeting the legitimate expectations of his employer. For example, she testified that the plaintiff just "wouldn't do the job," and that he "made some decisions on his own." In addition, Ms. Mills was not the Air Force official responsible for terminating the plaintiff. Mr. Griswold, the plaintiff's supervisor, has consistently maintained that he terminated the plaintiff for "insubordination," "causing discontent amongst [his] staff," and "poor work performance." Accordingly, Ms. Mills' testimony does not raise an inference that the Air Force's proffered reason for terminating the plaintiff is unworthy of credence.

As the plaintiff has not presented any evidence that the Air Force discriminated against him, established he was qualified for the position from which he was discharged, demonstrated that white Air Force employees were treated more favorably than he was, or produced any evidence tending to show the Air Force's proffered reasons for discharging him are pretexts for discrimination, the Court concludes the Air Force is entitled to summary judgment on the plaintiff's claim.

### 2. *Retaliation*

In his second claim, the plaintiff argues the Air Force terminated him in retaliation for his engaging in protected activity under Title VII. It is unclear which of two alleged protected activities the plaintiff relies upon in asserting this claim: the February, 1991, discrimination claim he filed against Ms. Wendt; or the May 23, 1991, labor grievance he presented to Mr. Griswold regarding the operation of the fish tank at the Club. For the reasons that follow, the plaintiff's retaliation claim fails under either interpretation of the claim.

42 U.S.C. § 2000e–3 provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title (citations omitted), or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title....

■ To establish a prima facie case of retaliation, the plaintiff must show that he engaged in a protected activity, that he was thereafter subjected by his employer to adverse employment action, and that a causal link exists between the two. *Ferguson v. duPont,* 560 F.Supp. 1172, 1200 (D.Del.1983).

■ If the plaintiff's unlawful retaliation claim is based upon the grievance he attempted to file with Mr. Griswold on May 23, 1991, his claim is not actionable under § 2000e–3. The plaintiff's labor grievance relating to fish tank operations at the Club is not a "protected activity" under § 2000e–3 as it does not relate to any claim of discrimination covered by Title VII.

■ If, on the other hand, the plaintiff's unlawful retaliation claim is based on the informal complaint he filed against Ms. Wendt in February, 1991, he has failed to offer any evidence suggesting a causal link between that filing and Mr. Griswold's action in terminating the plaintiff's employment. Mr. Griswold and Ms. Wendt were not in the same organization and Mr. Griswold hired the plaintiff *after* the plaintiff filed his complaint against Ms. Wendt. In light of the substantial evidence demonstrating the plaintiff's work performance was inadequate, and as Mr. Griswold hired the plaintiff after he filed a complaint of discrimination, no reasonable trier of fact could conclude Mr. Griswold

terminated the plaintiff in retaliation for the complaint he filed against Ms. Wendt.

For the foregoing reasons, the Court will grant the Air Force's motion for summary judgment. The Court will enter an Order in accordance with this Memorandum Opinion.