Calvin M. PRICE, Plaintiff,

v.

DELAWARE DEPARTMENT OF CORRECTION; Catherine Taylor; and George Hawthorne, Defendants.

No. Civ.A. 95–297–LON.

United States District Court,
D. Delaware.

March 9, 1999.

Laurence V. Cronin, Smith, Katzenstein & Furlow, Wilmington, DE, for plaintiff.

Michael F. Foster, State of Delaware Department of Justice, Wilmington, DE, for defendants.

## *OPINION*

LONGOBARDI, Senior District Judge.

### I. Introduction

Plaintiff Calvin M. Price was employed by the Delaware Department of Correction ("Department") as a probation officer assigned to the Work Programs Unit from November 1986 until July 1992. Plaintiff filed his complaint against the Department and two of his former supervisors, George Hawthorne and Catherine Taylor, on March 12, 1995. (Docket Item "D.I." 1). After the Court's Summary Judgment Order, (D.I.73–74), and an Order dismissing several counts of the complaint, (D.I. 112, amended D.I. 124), two claims remained: a Title VII[1] retaliation claim against the Department, and a retaliation claim under

---

1. 42 U.S.C. § 2000e, *et seq.* (1994 & supp. 1998).

42 U.S.C. § 1983 against the individual defendants.[2]

The jury made the following findings of fact in its verdict: (1) the Department took some adverse employment action against Plaintiff after he made a complaint of discrimination; (2) Plaintiff's complaint of discrimination was a determinative factor for the Department's adverse action against Plaintiff; (3) Plaintiff sustained injury, damage, loss or harm as a result of the Department's retaliation against him; (4) the changed conditions under which Plaintiff was required to work after making a complaint of discrimination were so intolerable that a reasonable person under all the circumstances would have been forced to resign; (5) George Hawthorne intentionally retaliated against Plaintiff for complaints of discrimination; (6) Catherine Taylor intentionally retaliated against Plaintiff for complaints of discrimination; (7) George Hawthorne and Catherine Taylor intentionally engaged in retaliatory or other wrongful practice with malice or reckless indifference to the rights of Plaintiff; and (8) Plaintiff would have been able to continue working for four years after his constructive discharge, in spite of his health problems. The jury then awarded Plaintiff $200,000 against the Department on the Title VII claim, and $100,000 in back pay against all Defendants jointly. Currently pending before the Court is Defendants' Motion for Judgment as a Matter of Law, for New Trial, or in the Alternative, for Amendment of the Jury Award.

## II. Facts

Briefly summarized, the relevant facts, in a light most favorable to Plaintiff,[3] are as follows: From November, 1986 through July, 1992, Calvin Price worked as a probation officer in the Work Programs Unit for the Delaware Department of Correction. In August, 1991, he and eleven other African–American employees who worked for the Division of Community Services, a division within the Department, filed a complaint of racial discrimination with Gregory Chambers, Delaware's Affirmative Action / Equal Employment Coordinator. Ms. Taylor and Mr. Hawthorne both knew that Plaintiff was one of the twelve employees who filed the complaint. This complaint resulted in a lengthy investigation, culminating in the conclusion that historical discrimination existed within the Department. Mr. Chambers communicated this to Mr. Hawthorne on December 18, 1991. The findings caused disruption within the Department, culminating with Senate Hearings in October, 1992. In the interim, little was accomplished to remedy the situation due to the Department's disagreement with Mr. Chamber's conclusions.

Ms. Taylor began supervising Plaintiff in May, 1991. Mr. Hawthorne was her supervisor. At the end of 1991, Ms. Taylor gave Plaintiff an exemplary performance review, his second consecutive glowing review. On February 6, 1992, Mr. Hawthorne submitted a written response to Mr. Chambers, disputing the findings of his investigation. On that same day, Ms. Taylor began to keep a log of her contacts with Plaintiff, and requested a monthly statistical report, which Plaintiff had been sending to the Wilmington office. While there were other sources from where Ms. Taylor could obtain this report, Plaintiff does not dispute that she was entitled to the report from Plaintiff. This, however, was the first time she requested this report in her seven months as Plaintiff's supervisor.

---

2. The claims against Defendants Catherine Taylor and George Hawthorne in their official capacities were dismissed in the Court's Summary Judgment Opinion and Order. (D.I.73–74). The claims at trial were against Mr. Hawthorne and Ms. Taylor in their individual capacities only.

3. In a motion for judgment as a matter of law, facts are construed in a light most favorable to the non-moving party. *See Keith v. Truck Stops Corp. of America*, 909 F.2d 743, 745 (3d Cir.1990).

Additionally, in April, 1992, Ms. Taylor made several unauthorized requests for Plaintiff's medical report from his cardiologist. Plaintiff had suffered two heart attacks in 1990, and a note in his file from the doctor stated that he could only work four-hour days. Plaintiff thought he could increase his work load as he felt better, and began to work full days. In 1991, Ms. Taylor asked Plaintiff on several occasions for a "how goes it" report from his doctor regarding his permitted workload, but Plaintiff never followed up on these requests. Five months passed from Ms. Taylor's last casual request to her unauthorized phone calls to the doctor. After being denied the information, Ms. Taylor and Mr. Hawthorne demanded Plaintiff submit a return to work form to update the note in the file, at which point, Plaintiff demanded to know the authority for the request before he would comply.

Throughout 1992, Ms. Taylor heavily criticized Plaintiff's work, criticism that a co-employee, Barbara Fisher, found to be factually inaccurate. Furthermore, Ms. Fisher testified that Ms. Taylor asked her to convince Plaintiff to retire on State disability pension. Additionally, Ms. Taylor diverted all of Plaintiff's calls to other people in the office, and barred him from discussing cases with his co-workers. These discussions with clients were a major part of his job, as he was primarily responsible for finding new work sites to provide positions for probationers. In June, 1992, while Plaintiff was out sick for a day, Ms. Taylor conducted an unannounced audit of Plaintiff's office. Subsequently, on June 22, 1992, Plaintiff took an extended sick-leave. On June 25, 1992, Ms. Taylor had two other officers deliver to Plaintiff's home a copy of a merit rule dealing with requests for sick leave over five days. After this, Plaintiff applied for a State disability pension, ending his employment with the Department.

4. Defendants properly made a Motion for Judgment as a Matter of Law at the close of

## III. Relevant Standards

### A. Judgment as a Matter of Law

 Defendants first move for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[4] To succeed, Defendants must meet a high burden:

A post-verdict motion for judgment as a matter of law pursuant to Rule 50(b) should be granted only where there is no legally sufficient basis for a reasonable jury to have found for the non-moving party. In considering a post-verdict motion for judgment as a matter of law pursuant to Rule 50(b), a reviewing court "must view the evidence in the light most favorable to the non-moving party." *Keith v. Truck Stops Corp. of America,* 909 F.2d 743, 745 (3d Cir. 1990); *see also Kelly v. Matlack, Inc.,* 903 F.2d 978, 981 (3d Cir.1990) (same). The reviewing court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1348 (3d Cir.1991), *reh'g, en banc, denied,* 1991 WL 228122, 1991 U.S.App. LEXIS 16758 (3d Cir. 1991), *appeal dismissed w.o. opinion,* 947 F.2d 939 (3d Cir.1991). If " 'the record contains the minimum quantum of evidence from which a jury might reasonably afford relief,' " *Keith,* 909 F.2d at 745 (quoting *Smollett v. Skayting Dev. Corp.,* 793 F.2d 547, 548 (3d Cir.1986)), then the reviewing court must deny the motion. Thus, "[w]here there is sufficient conflicting evidence, or insufficient evidence to conclusively establish the movant's case, judgment as a matter of law after the verdict should not be awarded." 5A James Wm.

Plaintiff's case, pursuant to Rule 50(a).

Moore, et al., *Moore's Federal Practice* ¶ 50.07[2] at p. 50–78 (1993). The reviewing court should not grant judgment as a matter of law merely because its view of the evidence differs with that manifest in the jury's verdict. Such action on the part of the reviewing court would constitute a usurpation of the jury's province as factfinder. *Newman v. Exxon Corp.*, 722 F.Supp. 1146, 1147 (D.Del.1989), *affirmed w.o. opinion*, 904 F.2d 695 (3d Cir.1990) ("Although a court in viewing the evidence of record may have reached a different conclusion from that reached by the jury, that alone is not reason to enter judgment [as a matter of law].").

*Garrison v. Mollers North America, Inc.*, 820 F.Supp. 814, 818–19 (D.Del.1993). *See also Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993); *Gonzalez v. Avon Products, Inc.*, 648 F.Supp. 1404, 1407 (D.Del.1986); *Tyler v. Board of Educ. of New Castle County*, 519 F.Supp. 834 (D.Del.1981).

## B. New Trial

■■■ Defendants alternatively ask the Court to order a new trial, alleging that the jury's verdict was against the weight of the evidence. Defendants also must meet a high standard for this motion.

Rule 59(a) of the Federal Rules of Civil Procedure supplies that standard. Rule 59(a) states that, "A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted at law in the courts of the United States." Fed.R.Civ.P. 59(a). Among the firmly established grounds for granting a new trial at common law are that the jury's verdict is against the weight of the evidence and that the jury's damages award is excessive. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *see also Schreffler v. Board of Educ. of Delmar School District*, 506 F.Supp. 1300, 1306–08 (D.Del.1981).

*Garrison*, 820 F.Supp. at 820.

" 'The authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court...' " *American Bearing Co., Inc. v. Litton Indus.*, 729 F.2d 943, 948 (3d Cir.) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980)), *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984) [parallel citations omitted]. However, where the ground on which a new trial is sought is that the jury's verdict was against the great weight of the evidence, the judge should proceed cautiously, since whenever a new trial is granted on this ground, the judge has necessarily substituted his or her judgment, at least to some extent, for that of the jury. *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993). Thus, a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks our conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991). This standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law. Thus, even where there exists that "minimum quantum of evidence" from which the jury might reasonably find in favor of the nonmoving party, *Dreyer v. Arco Chem. Co.*, 801 F.2d 651, 654 (3d Cir. 1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), a new trial may be granted. *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735–36 (3d Cir. 1988).

*Cudone v. Gehret*, 828 F.Supp. 267, 269–70 (D.Del.1993).

## C. Amendment of the Verdict—Remittitur

■■■ Finally, the Court can order remittitur under certain circumstances. "In

general, remittitur is employed when a damage award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error." *Datskow v. Teledyne Continental Motors Aircraft Products*, 826 F.Supp. 677, 690 (W.D.N.Y.1993) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984)). *See also Brunnemann v. Terra International, Inc.*, 975 F.2d 175, 178 (5th Cir.1992) (damage awards that are merely excessive or so large as to appear contrary to right reason are subject to remittitur). The Court, however, cannot unilaterally impose a new damage award. *See Brewer v. Uniroyal, Inc.*, 498 F.2d 973 (6th Cir.1974) (district court cannot, without consent of parties, substitute its judgment for that of jury on issue of just compensation without offering party awarded damages choice of new trial or amount of court's remittitur, otherwise parties' guarantee of trial by jury under the Seventh Amendment is eroded). Instead, a court may condition the denial of a motion for new trial upon the plaintiff's acceptance of the remittitur. The Court's authority to conditionally deny a motion for new trial is well established in American jurisprudence:

> [T]he court may condition a denial of the motion for new trial upon the filing by the plaintiff of a remittitur in a stated amount. In this way the plaintiff is given the option of either submitting to a new trial or of accepting the amount of damages that the court considers justified. This practice goes back to the opinion of Justice Story sitting at circuit in 1822 in *Blunt v. Little*, 3 Fed.Cas. 760 (1822). A number of Supreme Court decisions accepted Justice Story's view uncritically [*see, e.g., Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 65–66, 86 S.Ct. 657, 15

L.Ed.2d 582 (1966) ] and the power of the court to set remittitur has been uniformly accepted by the lower federal courts. [citations omitted]. Remittitur is said to be proper "where no clear judicial error or pernicious influence can be identified, but where the verdict is so large as to shock the conscience of the court."

11 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure*, § 2815 (1995) (quoting *Abrams v. Lightolier*, 841 F.Supp. 584 (D.N.J. 1994)). *See also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (Trial judge has discretion to overturn "verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)" and this procedure does not violate Seventh Amendment.); *Denholm v. Houghton Mifflin Co.*, 912 F.2d 357, 361 n. 5 (9th Cir.1990) (the permissibility of the "either remittitur or new trial" decision has been uniformly accepted) (citing *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935)); *Datskow*, 826 F.Supp. at 690–91 ("When a jury award is deemed to be excessive, the Court may order a new trial under Rule 59, or in its discretion, the Court may condition denial of the motion for new trial on plaintiffs accepting a remittitur of the excessive portion of the award.... [R]emittitur is appropriate when 'a properly instructed jury hearing properly admitted evidence makes an excessive award.' ") (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984)).

## IV. Title VII Claim

 Plaintiff's first claim against the Department is for discriminatory retaliation under Title VII.[5] To establish a prima

---

5. 42 U.S.C. § 2000e–3 provides: "It shall be unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice

made an unlawful employment practice by this title [citations omitted], or because he has made a charge, testified, assisted, or partici-

facie case, Plaintiff must show that: (1) he engaged in protected activity;[6] (2) he suffered adverse employment actions; and (3) a causal link exists between the employment actions and the exercise of the protected activity. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997); *Nelson v. Upsala College,* 51 F.3d 383, 386 (3d Cir.1995); *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 201 (3d Cir.1994); *Alston v. Rice,* 825 F.Supp. 650, 657 (D.Del. 1993). Once Plaintiff has established a prima facie case, the burden shifts to Defendant to "clearly set forth through the introduction of admissible evidence" reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the adverse employment actions. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "If the defendant rebuts the prima facie showing by demonstrating a legitimate, nondiscriminatory reason for the adverse employment actions, any presumption of discrimination drops from the case and the plaintiff has the burden to prove by preponderance of the evidence that the legitimate reasons proffered by the defendant were not its true reasons, but rather a pretext for discrimination." *Stafford v. E.I. DuPont de Nemours & Co.,* Civ.A. No. 94–228–SLR, 1995 WL 579596, at *6 (D.Del. Sept.29, 1995) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Defendants allege that Plaintiff established neither adverse employment action, nor any causal connection between the protected activity and the retaliation.

## A. Adverse Employment Action

 The Third Circuit has articulated that "[r]etaliatory conduct other than discharge or refusal to rehire is ... pro-scribed by Title VII only if it alters the employees 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect[s] his status as an employee.'" *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997) (quoting *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996); *McDonnell v. Cisneros,* 84 F.3d 256, 258 (7th Cir.1996)). An adverse employment action must be serious and tangible enough to affect Plaintiff's terms and conditions of employment. *Flint v. City of Philadelphia,* No. Civ.A. 98–95, 1998 WL 480849, at *5 (E.D.Pa. Aug.12, 1998) (citing *Robinson,* 120 F.3d at 1300). The Third Circuit's view is less restrictive than that of some other circuits, which hold that retaliation must involve a material or ultimate employment decision. *See, e.g., Mattern v. Eastman Kodak Co.,* 104 F.3d 702 (5th Cir.1997). Defendants argue that the actions outlined by Plaintiff do not rise to the level of an adverse employment action, as defined by the Third Circuit. These include: Ms. Taylor requesting medical information directly from Plaintiff's physician without authorization, asking Plaintiff to submit monthly statistical information directly to her, cutting off Plaintiff's contact with clients and co-workers (to afford him extra time to work through his backlog of cases), and performing an unannounced audit on Plaintiff's files while he was out sick. Additionally, Defendants sent officers to his home while he was out sick to deliver regulations regarding extended sick leave. None of these actions rise to the standard of an adverse employment action. Plaintiff was not fired, demoted, or docked pay. While clearly affecting some of his duties, the actions did not affect the compensation, terms and conditions of Plaintiff's employment.

 The jury, however, found that these actions, taken together with other

---

pated in any manner in an investigation, proceeding, or hearing under this title...."

**6.** This element is not in dispute.

evidence, constituted a constructive discharge. A constructive discharge qualifies as adverse employment action in the sense that it is the legal equivalent to actual termination. *Jordan v. Clark*, 847 F.2d 1368, 1377 n. 10 (9th Cir.1988) (citing 3 A. Larson & L. Larson, *Employment, Discrimination*, § 87.20 at 17–102 to 17–105 (1987)). "[A] plaintiff who voluntarily resigned may maintain a case of constructive discharge when the employer's allegedly discriminatory conduct creates an atmosphere that is the constructive equivalent of a discharge." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1075 (3d Cir.1996) (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir.1992)). The Third Circuit applies an objective test to determine whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir.1996) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir.1984)). In addition to the actions outlined above, Plaintiff introduced evidence that Ms. Taylor asked a co-worker to convince Plaintiff to take his disability pension and resign. Plaintiff also introduced evidence that Defendants were aware of the mounting stress that Plaintiff was under as a result of their activity, as well as being aware of his serious heart condition. This pattern of activity, especially given Plaintiff's well-known heart condition, made for objectively intolerable conditions. A reasonable person subject to these conditions would have no other choice but to resign. Accordingly, the jury's finding of constructive discharge, and therefore a finding of adverse employment action, has a sufficient legal basis and is not against the weight of the evidence.

## B. Causal Nexus

Defendants next allege that Plaintiff has failed to demonstrate a causal connection between the protected activity and the adverse employment action. The Third Cir-

cuit case law is split "on the question of whether the timing of the allegedly retaliatory action, can, by itself ever support a finding of causation." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (citing *Robinson*, 120 F.3d at 1302). In *Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir.1989), the court found that the plaintiff had established a prima facie case of retaliatory discharge where the employer fired him two days after filing an EEOC complaint. In *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997), the court stated that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link." *See also EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir.1997) (finding that employee's protected activity and the adverse employment action were "sufficiently close together to allow a reasonable factfinder to infer the required element of causation" for prima facie case, where the adverse action occurred two months after the employee engaged in protected activity); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997) (finding that adverse employment action taken four months after employee engaged in protected activity is "circumstantial evidence sufficient to raise the inference that [plaintiff's] protected activity was the likely cause for the adverse action.").

On the other hand, the Third Circuit has held that "timing alone will not suffice to prove retaliatory motive." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 n. 10 (3d Cir.1996). In *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir.1991), the court required more than temporal proximity alone, and characterized its statement in *Jalil* that "the timing of the discharge in relation to Jalil's EEOC complaint may suggest discriminatory motives" as limited to the facts of that case. The *Quiroga* court further stated that in *Jalil*, it "stopped short of creating an inference based upon timing alone." 934 F.2d at 501. In *Krouse*, the court stated that "[e]ven if timing alone could ever be suffi-

cient to establish a causal link, ... the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." 126 F.3d at 503 (citing *Robinson,* 120 F.3d at 1302).

Accordingly, the Court holds that in this case, the temporal proximity alone is not unusually suggestive enough to create an inference of causal connection. Temporal proximity, however, in addition to other evidence of discrimination, will establish the required link between protected activity and the adverse action. "[C]ircumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference" that the employee's protected activity was likely the reason for the adverse employment action. *Kachmar,* 109 F.3d at 177. *See also Woodson,* 109 F.3d at 920 ("a plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period"); *Farrell v. Planters Lifesavers Co.,* 22 F.Supp.2d 372, 392–93 (D.N.J. 1998). Plaintiff has demonstrated a close temporal proximity between the protected activity and the adverse employment action, and a pattern of antagonism after the protected conduct. In August, 1991, Plaintiff made the discrimination complaint. On December 18, 1991, Mr. Chambers concluded that historical discrimination existed within the Department. On February 6, 1992, George Hawthorne drafted a letter to Mr. Chambers, disputing his finding of historical discrimination within the Department. Mr. Hawthorne and Ms. Taylor were both aware of Plaintiff's role in the discrimination complaint. On that same day, Ms. Taylor began keeping a log of her contacts with Plaintiff. It was also on this day that she requested Plaintiff provide her with his monthly statistical report, even though she had been his supervisor since May, 1991. Additionally, over the next four months, Ms. Taylor contacted Plaintiff's doctor for a medical report on

several occasions without Plaintiff's authorization, and cut off his contact with co-employees and clients. This pattern, which Defendants attribute to Plaintiff's declining performance, began only a few months after Plaintiff had received his second consecutive exemplary year-end review. Therefore, the temporal proximity of these events, and the pattern of "retaliatory animus" establishes the required causal nexus. Accordingly, the jury's finding is reasonable, has a sufficient legal basis, and is not against the great weight of the evidence.

### C. Plaintiff's Evidence of Pretext

Once Plaintiff has proved his prima facie case, the burden of production shifts to Defendants to introduce evidence that they had legitimate, nondiscriminatory reasons for the adverse employment action. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). "The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge." *Id.* (citing *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994)). Defendants offered explanations at trial for each adverse decision. Therefore, the burden switched back to Plaintiff to present evidence that Defendants' reason was false, and that retaliation was the real reason. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Although Plaintiff presented no direct evidence of discriminatory retaliation (i.e., a smoking gun), the jury still found in his favor. This is a reasonable determination and not against the weight of the evidence. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered rea-

sons will permit the trier of fact to infer the ultimate fact of intentional discrimination ... upon such rejection, no additional proof of discrimination is required." *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

 Plaintiff produced significant evidence to give the jury reasons to disbelieve Defendants' proffered explanations. First, Ms. Taylor testified that her request for statistics .on February 6, 1992, was in the normal course of her supervision of Plaintiff. The statistics, however, were available from several other sources. Although she had the right to request them directly from Plaintiff, the timing of her request on the same day she began logging her contacts with Plaintiff could reasonably lead the jury to question her veracity. Second, Defendants testified that they called Plaintiff's cardiologist in April 1992, because in a previous letter one-year old, the doctor suggested that they call him with any questions. Again, however, Defendants' timing is suspicious. From the time they first raised the issue of Plaintiff's health with Plaintiff, they waited a full year before calling the doctor. This was also five months since they last raised the issue with Plaintiff. Furthermore, after the doctor's office told Ms. Taylor that they could not release the records without Plaintiff's authorization, Ms. Taylor made several more unauthorized attempts to obtain the records, and never approached Plaintiff for authorization. Finally, Defendants claimed that Department Regulation 224 required Plaintiff to complete a return to work form after an extended sick leave, which necessitated sending officers to Plaintiff's house while on sick leave in June 1992 to deliver these forms. Evidence was submitted to demonstrate that this was not the purpose of the visit, as the form was not delivered until two weeks later. Additionally, Plaintiff elicited testimony from Mr. Hawthorne that after reviewing approximately 900 files, only two employees had previously filled out the form that they required Plaintiff to complete. This evidence demonstrates the jury's reasonableness in not giving credence to Defendants' explanation for their adverse employment decisions. This disbelief, coupled with Plaintiff's proof of his prima facie case, leads to the conclusion that Plaintiff's case was legally sufficient and the jury's verdict was not against the weight of the evidence.

### D. Judicial Estoppel

Defendants further allege that the Court should grant judgment as a matter of law in their favor because of judicial estoppel. According to Defendants, Plaintiff took inconsistent positions, in that he testified to the Social Security Administration in March, 1991, that he was totally and permanently disabled, and he was approved for benefits in December, 1991. Furthermore, Plaintiff made similar representations when he applied for Delaware state disability benefits and an increase in Veterans Administration benefits. This, according to Defendants is wholly inconsistent with Plaintiff's claim that he could have worked for four more years after his constructive discharge. Plaintiff responded with evidence that he never accepted the Social Security benefits because he decided to keep working. Additionally, Plaintiff testified that the increase in Veterans benefits he sought was to increase his rating from 30% disabled to 60% disabled, which would have allowed him to keep working.

 The doctrine of judicial estoppel has historically been used in an attempt to bar ADA plaintiffs from obtaining total disability benefits while also claiming to be a qualified individual under the ADA. Here, Defendants attempt to use the doctrine to thwart Plaintiff's claim for back pay under Title VII and § 1983. The Third Circuit has stated that the doctrine of judicial estoppel is "an equitable doctrine, invoked by a court in its discretion (1) to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and (2) with a recog-

nition that each case must be decided upon its own particular facts and circumstances." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir.1996).[7] To determine whether judicial estoppel is applicable to a particular case, the court must undertake a two-part threshold inquiry: "(1) Is [the party's] present position inconsistent with a position formerly asserted . . . ? (2) if so, did [the party] assert either or both of the inconsistent positions in bad faith—i.e., with the intent to play fast and loose with the court?" *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir.1996).[8]

■■■ Even assuming that Plaintiff's current position is inconsistent with his previous positions, the doctrine of judicial estoppel is inapplicable. There is no evidence in the record that Plaintiff has acted in bad faith, by "deliberately asserting inconsistent positions in order to gain advantage." *Ryan Operations*, 81 F.3d at 363. To the contrary, Plaintiff testified that at the time he made his prior statements, he was wavering as to whether he wanted to continue working. His decision to turn down his social security benefits is evidence that he decided to continue working.[9] Furthermore, Plaintiff presented uncontested evidence by his physician that he was capable of working for four more years. Defendants were unable to counter this evidence, as they did not examine Plaintiff or put on their own expert. Because there is no evidence of bad faith by the Plaintiff, judicial estoppel is inapplicable to this case.

## V. § 1983 Claim

■■■ Defendants assert that Plaintiff's claim under 42 U.S.C. § 1983 against Mr. Hawthorne and Ms. Taylor must be dismissed, because a retaliation claim must be brought under Title VII, and § 1983 creates no independent basis for suit where Plaintiff fails to articulate a separate federal constitutional basis for his claim.

■■■ Section 1983 provides, in relevant part: "Every person who, under color [of law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (1994 & Supp.1998). Two elements are required for a prima facie case under § 1983: There must be conduct by someone acting under color of state law and this conduct must deprive Plaintiff of rights secured by the Constitution or laws of the United States. *Day v. Wayne*

---

7. *McNemar*, upon which the Defendants rely, has been heavily criticized by other circuit courts, *see, e.g., Swanks v. Washington Metro. Area Transit Auth.*, 116 F.3d 582, 584–87 (D.C.Cir.1997) and *Robinson v. Neodata Servs., Inc.*, 94 F.3d 499, 502 n. 2 (8th Cir. 1996), as well as in academia and by the EEOC. While still good law in the Third Circuit, Chief Judge Becker is on record as saying *McNemar* was wrongly decided and that the Court should reconsider it at its first opportunity. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502–03 & nn. 3–5 (3d Cir.1997).

8. The Sixth Circuit takes a less strict view of judicial estoppel. In *Griffith v. Wal–Mart*, 135 F.3d 376 (6th Cir.1998), the Court explained that statements made in the context of disability application "should not be the subject of judicial estoppel. . . . [S]uch representations [are] relevant evidence of the extent of plaintiff's disability, upon which an employer may rely in attempting to establish that an ADA plaintiff is not a qualified individual with a disability. . . . [S]uch representations are not conclusive as to the ADA issue, and a plaintiff is entitled to come forward with additional evidence that shows she could perform the essential duties of a desired position with or without reasonable accommodation notwithstanding the fact that she might have been deemed disabled under some other statutory or contractual framework."

9. In *Wilson v. Chrysler Motors Corp.*, No. 95 C 50336, 1997 WL 374410, at *3 (N.D.Ill. June 13, 1997), the court used judicial estoppel to bar a plaintiff's claim for back pay. The court found that "acceptance of [social security disability] benefits itself constitutes a position inconsistent with her position [that she could continue to work]."

*County Bd. of Auditors,* 749 F.2d 1199, 1205 (6th Cir.1984). Section 1983 is a remedial statute which does not create substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 616–18, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). It provides a remedy for the violation of rights created elsewhere. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). As the Supreme Court made clear in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), § 1983 provides a remedy for actions under color of law which contravene federally protected rights, whether those rights derive from the Constitution or from a federal statute. Here, it is undisputed that Defendants acted under color of state law. Also, as outlined above, they violated Title VII, a federal statute, by retaliating against Plaintiff for his complaints concerning their employment practices. Thus, while the prima facie case under § 1983 has been satisfied, there is something about the relationship between Title VII and § 1983 that requires a different conclusion.

▇▇▇ Defendants claim that a § 1983 claim is preempted by Title VII. Title VII, however, does not categorically preempt all § 1983 claims based on employment discrimination. *See, e.g., Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir. 1990); *Regan v. Township of Lower Merion,* 36 F.Supp.2d 245 (E.D.Pa.1999). The issue here is whether a § 1983 claim is cognizable when the only conduct at issue is retaliation in violation of Title VII. Most circuits, including the Third Circuit, have held that "Title VII is not the exclusive remedy for discrimination claims against state or municipal employers, where those claims derive from violations of Constitutional rights." *Annis v. County of Westchester,* 36 F.3d 251, 254 (2d Cir.1994). *See also, Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1079 (3d Cir.1990) ("Title VII does not preempt section 1983, and ... discrimination claims may be brought under either statute or both"); *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir.1989) (injured public employee may pursue remedy under § 1983 as well as under Title VII when employer's conduct violates both Title VII and a separate constitutional or statutory right). The Tenth Circuit has also summarized this principle:

> [A] § 1983 claim is "independent" from Title VII when it rests on substantive rights provisions outside Title VII—that is, when it rests on a constitutional right or a federal statutory right other than those created by Title VII. We emphasize that the basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII. For example, a § 1983 claim of racial discrimination is independent of a statutory disparate treatment claim arising out of the same set of facts because the § 1983 claim is substantively grounded in the Equal Protection Clause of the Fourteenth Amendment, whereas the disparate treatment claim flows from Title VII. Because the substantive legal standards that govern these claims emanate from different sources, as long as the substantive legal bases for the claims are distinct, our "independence" requirement is satisfied and Title VII does not foreclose an employment discrimination plaintiff's § 1983 claim.

*Notari v. Denver Water Dept.,* 971 F.2d 585, 587 (10th Cir.1992) (plaintiff alleged denial of promotion based on race).

These cases, however, all involved allegations of intentional racial discrimination, not retaliation for a protected activity. For example, in *Bradley,* the plaintiff alleged that he was terminated on the basis of his race. *Bradley,* 913 F.2d at 1078. In *Keller v. Prince George's County,* a plaintiff was allowed to proceed under § 1983 where she claimed that the defendant did not promote her because of her race. 827

F.2d 952 (4th Cir.1987). Therefore, in addition to violating Title VII, the conduct at issue in these cases also violated the Equal Protection Clause of the Constitution.

 At issue here is only Plaintiff's claim of retaliation for a complaint of discrimination, a protected activity. There is no charge of intentional racial discrimination in violation of the Equal Protection Clause. Nor is there a charge, for example, that the retaliation was in response to the exercise of the First Amendment right to free speech. *See, e.g., Johnston,* 869 F.2d at 1576. Plaintiff makes no argument that Defendants' conduct violated the Constitution or any federal law other than Title VII's retaliation provision. Under these circumstances, where there is no basis for a § 1983 claim other than the retaliatory conduct proscribed by Title VII, courts have held that the § 1983 claim cannot stand alone. For example, in *Lewis v. Delaware,* 986 F.Supp. 848, 857 (D.Del.1997), the Court held that a § 1983 retaliation action is not actionable under the Equal Protection Clause, and is more properly remedied through Title VII. *See also Long v. Laramie County Community College District,* 840 F.2d 743, 752 (10th Cir.1988) (holding that a theory of liability under federal law for retaliatory conduct does not come within § 1983, and supports only a Title VII claim); *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1205 (6th Cir.1984) (holding that where defendants did not discriminate against plaintiff, and the only wrongful act was retaliation in violation of Title VII, Congress did not intend this violation to be the basis of a § 1983 claim); *Lightner v. Town of Ariton, Alabama,* 902 F.Supp. 1489, 1499 (M.D.Ala.1995) (holding that plaintiff cannot maintain § 1983 action predicated on retaliation provision of Title VII); *Arnett v. Davis County School District,* No. 92–C–988W, 1993 WL 434053, at *4 (D.Utah Apr.5, 1993) ("a theory of liability for retaliatory conduct does not come within § 1983"); *Moche v. City University of New York,* 781 F.Supp. 160, 168 (S.D.N.Y.

1992) (holding that retaliation claims cannot be brought under § 1983 because they are exclusive to Title VII, but claims of intentional discrimination are actionable under § 1983 as violations of the Equal Protection Clause and stand independently of Title VII). Therefore, this Court grants judgment as a matter of law in favor of Defendants Hawthorne and Taylor for the claim of retaliation under § 1983. A claim of retaliation cannot be the sole basis for a § 1983 claim where there is no violation of the Constitution or federal law, other than the retaliation provision of Title VII.

This Court's holding is consistent with the recent case of *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061 (3d Cir.1996). In that case, the Third Circuit held that individual employees cannot be held liable under Title VII. *Id.* at 1077. Holding the individual Defendants liable under § 1983 in the case at bar would create individual liability for conduct that violated only Title VII's retaliation provision. Their conduct was not found to violate any constitutional provision, or a statutory provision other than Title VII. Holding them individually responsible would be contrary to the holding of *Sheridan.* Therefore, individual defendants can only be held liable under § 1983 for retaliatory conduct that violates rights created by the Constitution or federal laws other than Title VII. A claim based on Title VII's retaliation provision does not meet this standard.

## VI. Amendment of Judgment—Remittitur

Defendants also move for an amendment of the judgment in light of the excessive damage award. However, they have cited no authority to demonstrate the excessiveness and give no basis for such a ruling. For this reason, and because the jury's verdict does not shock the conscience of the Court, the Court will not grant an amendment of the jury verdict, or grant a new trial on the grounds that the verdict was excessive.

## VII. Conclusion

For the aforementioned reasons, the Court grants Judgment as a Matter of Law in favor of Defendants Taylor and Hawthorne on the § 1983 claim. The Department's Motion for Judgment as a Matter of Law, New Trial or Amendment of the Judgment is Denied for the Title VII claim. The Department remains liable for $200,000 in compensatory damages and $100,000 in back pay.