**George JOHNSON, Plaintiff,**

**v.**

**E.I. DU PONT DE NEMOURS & COMPANY, Defendant.**

No. Civ.A. 97–282–LON.

United States District Court, D. Delaware.

May 12, 1999.

Edward C. Gill, Law Offices of Edward C. Gill, Georgetown, DE, for plaintiff.

Evelyn Hassinger Brantley, E.I. du Pont de Nemours & Co., Wilmington, DE, for defendant.

*MEMORANDUM OPINION*

LONGOBARDI, Senior District Judge.

## I. INTRODUCTION

Plaintiff George Johnson was employed by E.I. DuPont de Nemours & Co. ("DuPont") beginning in 1980. On June 2, 1997, plaintiff filed his Complaint, asserting a claim of retaliation under Title VII.[1]

(Docket Item "D.I." 1). The Complaint alleges that DuPont retaliated against him for filing a previous lawsuit.[2] DuPont filed a Motion to Dismiss, which this Court denied, (D.I.7, 13), and then filed its Answer on April 22, 1998, denying liability. (D.I.15). As per the Court's scheduling Order (D.I. 20, amended D.I. 60), the parties have completed discovery. Currently pending is the defendant's Motion for Summary Judgment (D.I.68).

## II. FACTS

Plaintiff was first employed by DuPont in 1980, at its Seaford Nylon Plant. On April 17, 1995, plaintiff, who had been temporarily assigned to the Penco Service Center, was reassigned to the Seaford Plant on probation status. (D.I. 70 at A98). According to the affidavit of Darrell Marshall, plaintiff's supervisor upon reassignment to Seaford (*Id.* at A36–55), plaintiff was assigned to operate a piddler truck, which mechanically lifts containers of yarn, while plaintiff walks along the side of the truck as it operates. Mr. Marshall removed plaintiff from probation on August 4, 1995, because plaintiff had completed several months of satisfactory performance. On August 13, 1995, plaintiff was placed on select work, based on his physician's directive.[3] The following day, plaintiff was scheduled to meet with Dr. Christian Jensen at the Plant's Integrated Health Section, but he failed to keep the appointment. Mr. Marshall informed plaintiff that he must provide documentation from his treating physician concerning his physical limitation. (*Id.* at A37.) Plaintiff remained on select work until Decem-

---

**1.** Section 704(a) of Title VII forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation ... under this subchapter." 42 U.S.C. § 2000e–3(a).

**2.** The first lawsuit, *Johnson v. DuPont,* C.A. 95–807–JJF, was tried to a jury on claims of

gender and disability discrimination. The jury rendered a verdict in favor of DuPont. The court denied plaintiff's Motion for New Trial, and the decision was upheld on appeal by the Court of Appeals for the Third Circuit.

**3.** According to plaintiff, select work means that he remains in the same job assignment, while only performing some of the duties. (D.I. 70 at A87).

ber 23, 1995. Mr. Marshall gave plaintiff a written Health and Fitness Discussion on January 6, 1996. In this document, Mr. Marshall informed plaintiff that he had missed five days due to disability and had 88 select work days in 1995. (*Id.* at A57). Mr. Marshall also reminded plaintiff that availability to perform his work is a condition of employment.

On February 22, 1996, plaintiff received an Intermediate Contact for disrespecting a co-worker by using abusive language. (*Id.* at A58). On March 26, 1996, plaintiff requested and received reassignment. (*Id.* at A38). One month later, plaintiff again requested and received reassignment. (*Id.*) Plaintiff returned to select work on May 6, 1996, and never returned to full duty before defendant terminated his employment on September 16, 1996. (*Id.* at A62–63).

During 1996, plaintiff was given several written warnings concerning problems with his job performance. On May 13, 1996, Mr. Marshall gave plaintiff an Intermediate Contact for being "absent without leave/insubordination." (*Id.* at A60). Mr. Marshall also gave plaintiff a written "special counseling" on June 16, 1996, requesting that plaintiff schedule monthly reviews with Integrated Health, due to his return to select work. Mr. Marshall also reminded plaintiff that availability for work was a condition of employment. On August 16, 1996, Mr. Marshall gave plaintiff another Intermediate Contact for failing to provide information regarding his inability to work. (*Id.* at A61). In this document, Mr. Marshall informed plaintiff that in his one year and four months in the department, plaintiff had been unable to perform his duties for 144.93 total days, an unacceptable level of absenteeism, which placed plaintiff's job in jeopardy. Plaintiff was asked to provide a release so that DuPont could speak directly with his physician, but plaintiff did not supply this release.

Plaintiff was terminated on September 16, 1996. Mr. Marshall stated that plaintiff was terminated "due to his high unavailability for assigned duties and unwillingness to take steps necessary to get fit for duty. As Johnson's immediate supervisor, I recommended the termination. The basis for my recommendation was Johnson's violation of the Disability–Related Attendance Policy." (*Id.* at A39). Mr. Marshall, however, did not have the authority to fire plaintiff. The ultimate decision rested in the hands of Paul Couvillion. (D.I. 67 at B–37). Mr. Couvillion testified that the he fired plaintiff after considering the recommendation of Mr. Marshall because "Johnson chose not to perform the work he was assigned." (*Id.*). Plaintiff testified in his deposition that he was aware of the reasons for his termination and of the Disability–Related Attendance Policy. (D.I. 70 at A81–82, 86).

Plaintiff had filed his first lawsuit against DuPont on December 22, 1995. He was assigned to Mr. Marshall's supervision in April, 1995. This was after he filed the EEOC charge of discrimination relating to the first lawsuit, but before filing his complaint with this Court in that matter. According to plaintiff, Mr. Marshall assigned him the most difficult jobs possible at DuPont. (D.I. 67 at B–20). He was also required to submit to drug-testing, and he testified that no other employees were required to undergo such testing. (*Id.* at B–30). On July 22, 1996, plaintiff's first case against DuPont was heard in mediation by the Honorable Magistrate Judge Mary Pat Thynge. DuPont was represented at that hearing by those with authority to settle the case. DuPont's representatives were in the elevator with DuPont's lawyer, after the mediation, when plaintiff overheard DuPont's attorney say "[s]omething about they were going to do something and then they were going to fire me." (*Id.* at B–28). Plaintiff testified, however, that he did not believe that the lawyer who made this statement had the authority to fire him. (D.I. 70 at A109). Mr. Couvillion testified that it was his sole decision to fire plaintiff. (*Id.* at A71).

Mr. Couvillion gave a deposition in the first lawsuit on July 26, 1996, nearly two months before firing plaintiff. In his deposition for this case, he did not recall the specific timing of whether the firing occurred before or after he gave a deposition in the first case, but that if the deposition did occur first, then he was aware of the lawsuit at the time he fired plaintiff. (D.I. 73 at C2–3).

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

While the moving party has the initial burden to identify evidence that demonstrates the absence of a genuine issue of material fact, once that burden has been met, the nonmoving party must make a sufficient showing to establish the existence of every element necessary to its case and on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Credibility determinations are not the function of the judge; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

 The Court of Appeals for the Third Circuit has provided the following standard for determining the appropriateness of summary judgment in a Title VII case:

Because the plaintiff bears the burden of persuasion in Title VII actions, a defendant is entitled to summary judgment if it can demonstrate that the plaintiff could not carry the burden of proof at trial. The defendant may demonstrate this in two ways: it may show that the plaintiff is unable to establish a prima facie case of discrimination; or, if the plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for discharge. Summary judgment is inappropriate, however, if the plaintiff establishes a prima facie case and counters the defendant's proffered explanation with evidence raising a factual issue regarding the employer's true motivation for discharge. When the defendant's intent has been called into question, the matter is within the sole province of the factfinder. As we have pointed out before, because "intent is a substantive element of the cause of action—generally to be inferred from the facts and conduct of the parties—the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility."

*Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir.1989) (quoting *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981) (citation omitted)), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

## IV. DISCUSSION

Claims brought under Title VII for retaliation may be developed under one of two analytical frameworks. The first is a "mixed motive" case under the Supreme Court's *Price Waterhouse* framework. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under this analysis, the plaintiff

must present direct evidence of defendant's discrimination. The second framework is the "pretext" analysis, developed under the *McDonnell Douglas* line of cases. This is an exercise in burden-shifting. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendant alleges that it is entitled to summary judgment, because plaintiff can produce no direct evidence of discrimination under the mixed motive analysis. Furthermore, defendant maintains that plaintiff cannot demonstrate any evidence of causation to establish a prima facie case of retaliation under the pretext analysis. Additionally, defendant alleges that plaintiff cannot produce any evidence to rebut defendant's legitimate business reason for his termination.

## A. *Price Waterhouse* Analysis

■ In order for the plaintiff to come within the *Price Waterhouse* framework, he must present direct evidence of discrimination. *Armbruster v. Unisys Corp.,* 32 F.3d 768, 778 (3d Cir.1994). The Third Circuit has stated that the evidence "must directly reflect a discriminatory or retaliatory animus on the part of the person involved in the decisionmaking process" to come within the *Price Waterhouse* framework. *Id.* (citing *Griffiths v. CIGNA Corp.,* 988 F.2d 457, 470 (3d Cir.1993)). "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Id.* at 779 (quoting *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 545 (3d Cir.1992)). Furthermore, Justice O'Connor, in her concurrence with the *Price Waterhouse* plurality stated:

> [S]tray remarks in the workplace, while perhaps probative of sexual harassment, cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements of nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiffs burden in this regard.... What is required is ... direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.

*Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring) (citation omitted).

■ Plaintiff maintains that the record is replete with direct evidence of retaliation. Plaintiff cites the comment made by a DuPont attorney in the elevator during mediation of plaintiff's first lawsuit, the timing of the firing two months after the comment, conflicting reasons given for termination by Mr. Marshall and Mr. Couvillion, and Mr. Couvillion's denial of knowledge of the first lawsuit when he fired plaintiff. Only the comment plaintiff heard in the elevator could conceivably be considered direct evidence. All of the other evidence proffered by the plaintiff is circumstantial and will be considered in the pretext analysis.

The statement that plaintiff testified to, is that a DuPont attorney said, "something about they were going to do something and then they were going to fire me." (D.I. 67 at B–28). Plaintiff testified, however, that he did not believe that the lawyer who made this statement had the authority to fire him. (D.I. 70 at A109). Additionally, Mr. Couvillion testified that he was the only person who had the authority to fire plaintiff. (D.I. 67 at B–37). Therefore, this statement does not meet the standard of direct evidence of retaliatory animus. There is no evidence in the record that the attorney who made the statement had the power to fire plaintiff. All evidence is to the contrary. Plaintiff argues that because DuPont was required to have in attendance at mediation those

with authority to settle the suit, that these people must therefore have had the authority to fire plaintiff. The Court, however does not see the logic of this argument. The decision-makers in the lawsuit are not necessarily those with authority to make personnel decisions. Mr. Couvillion was the person with authority to fire plaintiff, and there is no evidence that he made the statement or that he was even in the elevator when the statement was made. A statement by a nondecisionmaker cannot satisfy plaintiff's burden of proof. *Armbruster*, 32 F.3d at 779. Plaintiff, therefore, has proffered no direct evidence of retaliatory animus.

In *Paci v. Rollins Leasing Corp.*, No. 96–295–SLR, 1997 WL 811553 (D.Del. Dec.18, 1997), this Court awarded summary judgment to the defendant in a sex discrimination claim. Plaintiff proffered as direct evidence of discrimination the statement of defendant's in-house counsel that "[Rollins was] looking at a half-a-million dollar lawsuit ... [because t]here [wasn't] a jury in the world that would not believe a woman who got on the stand crying and who had a miscarriage." *Id.* at *8. The Court held that this single statement of discriminatory intent did not constitute direct proof that plaintiff was fired because of his gender. "Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Id.* (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir.1993)). Similar to *Paci*, the remark overheard by plaintiff at bar does not "directly reflect a discriminatory bias on the part of" defendant. *Id. See also Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 516 (3d Cir.1997) (defendant's statement that plaintiff's "loyalties do not rest with the Company's best interests" is vague and does not demonstrate that retaliation was more likely than not the motivating factor in the decision to terminate plaintiff). Additionally, the comment was made by a DuPont attorney who was not the decisionmaker regarding plaintiff's employment status. Plaintiff, therefore, cannot meet his burden under *Price Waterhouse*.

## B. Pretext Analysis

When plaintiff cannot produce direct evidence of discrimination, he must proceed under a pretext theory. First, the plaintiff must establish a prima facie case of retaliation. To establish a prima facie case, plaintiff must show that: (1) he engaged in protected activity; (2) he suffered adverse employment actions; and (3) a causal link exists between the employment actions and the exercise of the protected activity. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997); *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir.1995); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir.1994); *Alston v. Rice*, 825 F.Supp. 650, 657 (D.Del. 1993). Once Plaintiff has established a prima facie case, the burden shifts to defendant to "clearly set forth through the introduction of admissible evidence" reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the adverse employment actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "If the defendant rebuts the prima facie showing by demonstrating a legitimate, nondiscriminatory reason for the adverse employment actions, any presumption of discrimination drops from the case and the plaintiff has the burden to prove by preponderance of the evidence that the legitimate reasons proffered by the defendant were not its true reasons, but rather a pretext for discrimination." *Stafford v. E.I. DuPont de Nemours & Co.*, Civ. A. No. 94–228–SLR, 1995 WL 579596, at *6 (D.Del. Sept.29, 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Defendant alleges that plaintiff has failed to produce any evidence of causation, thereby failing to

satisfy the prima facie elements. Additionally, defendant alleges that plaintiff has failed to produce sufficient evidence to rebut DuPont's legitimate business reasons for his termination.

1. Prima Facie Case

 Plaintiff has clearly satisfied elements one and two of the prima facie case. Filing the first lawsuit against DuPont is a protected act. Additionally, termination of employment is an adverse employment action.[4] At issue is whether plaintiff has presented sufficient evidence of causation to create a genuine issue of material fact. Plaintiff asserts that the proximity in time between the statement in the elevator and the subsequent termination of employment is enough to satisfy causation. This Court has recently analyzed this issue:

> The Third Circuit case law is split "on the question of whether the timing of the allegedly retaliatory action, can, by itself ever support a finding of causation." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997)). In *Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989), the court found that the plaintiff had established a prima facie case of retaliatory discharge where the employer fired him two days after filing an EEOC complaint. In *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997), the court stated that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link." *See also EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir.1997) (finding that employee's protected activity and the adverse employment action were "sufficiently close together to allow a reasonable factfinder to infer the required element of causation" for prima facie case, where the adverse action occurred two months af-

ter the employee engaged in protected activity); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997) (finding that adverse employment action taken four months after employee engaged in protected activity is "circumstantial evidence sufficient to raise the inference that [plaintiff's] protected activity was the likely cause for the adverse action.").

On the other hand, the Third Circuit has held that "timing alone will not suffice to prove retaliatory motive." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 n. 10 (3d Cir.1996). In *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir.1991), the court required more than temporal proximity alone, and characterized its statement in *Jalil* that "the timing of the discharge in relation to Jalil's EEOC complaint may suggest discriminatory motives" as limited to the facts of that case. The *Quiroga* court further stated that in *Jalil*, it "stopped short of creating an inference based upon timing alone." 934 F.2d at 501. In *Krouse*, the court stated that "[e]ven if timing alone could ever be sufficient to establish a causal link, ... the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." 126 F.3d at 503 (citing *Robinson*, 120 F.3d at 1302).

Accordingly, the Court holds that in this case, the temporal proximity alone is not unusually suggestive enough to create an inference of causal connection. Temporal proximity, however, in addition to other evidence of discrimination, will establish the required link between protected activity and the adverse action. "[C]ircumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference" that the employee's protected

---

4. Plaintiff also asserts that he received the most difficult work assignments at DuPont, and was singled out for drug testing. Plaintiff has produced no evidence to demonstrate these allegations; however, because defendant terminated his employment, it is unnecessary to determine whether these other alleged adverse actions are meritorious.

activity was likely the reason for the adverse employment action. *Kachmar*, 109 F.3d at 177. *See also Woodson*, 109 F.3d at 920 ("a plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period"); *Farrell v. Planters Lifesavers Co.*, 22 F.Supp.2d 372, 392–93 (D.N.J.1998). *Price v. Delaware Dep't of Correction*, 40 F.Supp.2d 544, 553 (D.Del.1999). In *Price*, this Court found the required pattern of antagonism, where the defendant logged its contacts with plaintiff, requested statistical reports, made unauthorized attempts to contact plaintiff's physician, and cut off his contact with clients.

In the case at bar, two months passed from when plaintiff heard the statement in the elevator to when defendant terminated his employment. The proper focus for temporal examination is the period from the date of the protected activity to the date of termination. This was from December 22, 1995 until September 16, 1996, nearly ten months. This time frame is not nearly short enough to create an inference of causation on its own. Additionally, there is no pattern of antagonism in that time frame, as there was in *Price*. To the contrary, on two occasions, plaintiff asked for, and almost immediately received changes in assignments. (D.I. 70 at A38). Plaintiff received several Intermediate Contacts during this time period, but they were written by Mr. Marshall, who was not even aware of plaintiff's first lawsuit. (*Id.* at A110–11). Therefore, plaintiff has not produced sufficient evidence to demonstrate the existence of causation, and cannot make a prima facie showing of retaliation as a matter of law.

2. Evidence to Rebut DuPont's Legitimate Business Reasons for Termination

■ While plaintiff's case fails as a matter of law because of his inability to prove his prima facie case, in the interest of thoroughness, the court will examine the record to determine if plaintiff has produced evidence to rebut defendant's legitimate reasons for discharge. According to Mr. Marshall, plaintiff was terminated "due to his high unavailability for assigned duties and unwillingness to take steps necessary to get fit for duty.... The basis for my recommendation was Johnson's violation of the Disability–Related Attendance Policy." (D.I. 70 at A39). According to Mr. Couvillion, he fired plaintiff because "Johnson chose not to perform the work he was assigned." (D.I. 67 at B–37). These statements are supported by the Intermediate Contacts and counseling statements written by Mr. Marshall, and plaintiff's attendance record and time spent on select work. Furthermore, DuPont has a policy for disability based attendance and discipline. DuPont warned plaintiff on several occasions that he was violating that policy and that his job was in jeopardy.

Accordingly, it is plaintiff's burden to produce evidence demonstrating that the legitimate reasons proffered by the defendant were not its true reasons, but rather a pretext for discrimination. Plaintiff submits that the evidence of pretext includes: plaintiff was assigned the most difficult work, plaintiff was singled out to take a drug test, conflicting reasons were given for termination by Mr. Marshall and Mr. Couvillion, and Mr. Couvillion's denied knowledge of the first lawsuit when he fired plaintiff.

■ Plaintiff's allegations that defendant assigned him the most difficult work, and singled him out for drug testing, are allegations unsupported by any evidence. For example, plaintiff did not produce any evidence of defendant's drug testing policy, or records demonstrating that he was the only one tested. Plaintiff's conclusory allegations do not constitute sufficient evidence to defeat a motion for summary judgment. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir.1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981)).

Plaintiff's other two allegations are contrary to the evidence in the record, even

when examined in a light most favorable to him. Plaintiff claims that the explanations for his termination from Mr. Marshall and Mr. Couvillion are in conflict, and this is evidence of pretext. Mr. Marshall recommended plaintiff's termination, but only Mr. Couvillion had the power to carry it out. Therefore, Mr. Marshall's rationale for his recommendation is not relevant. Furthermore, their explanations are not inconsistent with each other. Mr. Marshall recommended termination because plaintiff never was able to fully perform his work. Mr. Couvillion decided to fire plaintiff because he believed that plaintiff made a conscious decision not to work. Both explanations were based on plaintiff's inability to perform his work at a satisfactory level. These reasons are not inconsistent, and therefore, provide no basis for a reasonable jury to infer a discriminatory pretext for defendant's decision to discharge the plaintiff.

Finally, plaintiff claims that Mr. Couvillion's denial of knowledge of plaintiff's first lawsuit at the time he terminated plaintiff is evidence of pretext. Plaintiff misstates the record. Mr. Couvillion, in his deposition for this case, stated that he was unclear as to whether he had knowledge of the first suit at the time he fired plaintiff. He stated:

A: I don't recall whether Mr. Johnson was fired or terminated prior to that case or not. I don't recall the time sequence of when he was terminated. My best recollection is he had already been terminated when you were deposing me at the time.

Q: But let me get all the facts. As far as the dates, if the dates suggest otherwise, would you agree with me that you were aware of all these things prior to firing Mr. Johnson?

A: I would only suggest that I might be aware of whatever the case was at the time, yes, and I don't know what the specifics of the case might have been.

(D.I. 73 at C-2-3). At best, this shows Mr. Couvillion's confusion over the timing of the firing in relation to the first lawsuit. However, it is not sufficient to demonstrate that he testified falsely about his knowledge and is not sufficient evidence to demonstrate a discriminatory pretext on the part of defendant. Accordingly, plaintiff has failed to proffer sufficient evidence to rebut defendant's legitimate business explanation for terminating plaintiff's employment.

## V. CONCLUSION

For the aforementioned reasons, defendant's Motion for Summary Judgment is granted. Plaintiff has not proffered sufficient evidence to demonstrate that he could carry the burden of proof at trial. Plaintiff cannot establish a prima facie case of retaliation under Title VII, and cannot produce sufficient evidence of pretext to rebut defendant's nondiscriminatory reasons for discharge.