**Richard J. SCHATZMAN, Plaintiff,**

v.

**MARTIN NEWARK DEALERSHIP, INC., Defendant.**

**No. CIV. A. 99–731–JJF.**

United States District Court, D. Delaware.

Aug. 14, 2001.

---

David E. Wilks, Esquire, of White & Williams L.L.P., Wilmington, Delaware. Attorney for Plaintiff.

R. Stokes Nolte, Esquire, of Nolte, Brodoway & Saltz, P.C., Wilmington, Delaware. Of Counsel: L. Oliver Frey, Esquire, of Frey, Petrakis, Deeb & Blum, P.C., Philadelphia, Pennsylvania. Attorneys for Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Defendant, Martin Newark Dealership, Inc.'s Motion for Summary Judgment (D.I.23). For the

reasons stated below, the Court will grant the motion in part and will deny the motion in part.

## BACKGROUND

Plaintiff Richard Schatzman, a white male, was hired by Defendant Martin Newark Dealership, Inc. as a manager in the Honda sales department on May 1, 1998. Plaintiff contends that in August 1998, he heard a co-worker and fellow manager, Larry Thompson, make a reference to "monkeys" in a manner which Plaintiff considered to be racially derogatory.[1] Plaintiff made a telephone call to the Delaware Department of Labor ("DDOL"), which advised Plaintiff to report the incident to his supervisor. Plaintiff followed this advice and reported the incident to Ron Baylis, and Mr. Baylis punished Mr. Thompson by giving him a written warning. Immediately after receiving his written warning, Mr. Thompson confronted Plaintiff, called him a "big asshole," and threatened to get back at Plaintiff. (D.I. 25, Exh. A at 46).

In September 1998, Mr. Thompson submitted a written statement to his supervisor accusing Plaintiff of calling a female co-worker, Carol Heyse, a "cunt." (D.I.23, Exh. G). Written statements largely corroborating Mr. Thompson's account of the facts were also submitted by Ms. Heyse and another manager, Adam Staffin. (D.I. 23, Exh. E at 54). Around this time, Plaintiff notified Mr. Baylis about Mr. Thompson's threatened retaliation, and Mr. Baylis said he would take care of the problem. (D.I. 25, Exh. A at 60).

Defendant's General Sales Manager, Hommie Poursaide, investigated Plaintiff's alleged vulgar statement by talking with Ms. Heyse. (D.I. 23, Exh. F at 18). He issued Plaintiff a written warning and allowed Plaintiff to write down his version of the facts on the back of the written warning. (D.I. 23, Exh. F at 18–19). The next day, Plaintiff was called into the office of Defendant's General Manager, Mike Kardon, who terminated Plaintiff from his employment. (D.I. 25, Exh. A at 71–72). Mr. Kardon's decision was based on a conversation he had with Mr. Poursaide, the three written statements, and on the fact that Plaintiff had mistreated Ms. Heyse in the past. (D.I. 23, Exh. G at 65; D.I. 25, Exh. A at 71–72).

After having filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the DDOL, Plaintiff filed the instant action on November 1, 1999, alleging (1) unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. §§ 1981 and 1981a, and (2) breach of the implied covenant of good faith and fair dealing under Delaware state law. (D.I.1). After discovery was completed, Defendant filed the instant motion for summary judgment.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all

---

1. Specifically, Plaintiff contends that when discussing a weekend motorcycle trip that Mr. Thompson had taken through Trenton, New Jersey, Mr. Thompson stated: "I had monkeys to my left and monkeys to my right." (D.I. 23, Exh. A at 29).

inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence.[2] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Implied Covenant of Good Faith and Fair Dealing Claim

#### A. Exceptions to At–Will Employment Doctrine

■ Under Delaware law, employees are generally deemed "employees at will," meaning that they can be terminated from their employment without cause, regardless of the employer's motive. *Dial v.*

*AstroPower, Inc.*, 2000 WL 1211135, at *3 (Del.Super.Ct. June 20, 2000). However, there are four exclusive exceptions to the at-will employment doctrine that allow an at-will employee to recover for an employer's breach of the implied covenant of good faith and fair dealing. These "exceptions" include: (1) when job termination violates public policy, (2) when the employer misrepresents a material fact which the employee relies upon in deciding either to retain the current position or to accept a new one, (3) when the employer uses its superior bargaining position to deprive an employee of his or her earned compensation, and (4) when the employer falsifies or manipulates records in order to create false grounds for termination. *Id.* (citing *E.I. DuPont de Nemours v. Pressman*, 679 A.2d 436, 441–44 (Del.1996)).

Plaintiff's Complaint alleges that Defendant breached the implied covenant of good faith and fair dealing ("the Covenant") by: (1) terminating Plaintiff in retaliation for his objecting to a hostile work environment in violation of Delaware's public policy, and (2) manufacturing false grounds for terminating Plaintiff. (D.I. 1 at 18–21; D.I. 25 at 11). Defendant contends that summary judgment is warranted because neither exception to the at-will employment doctrine relied upon by Plaintiff is implicated in the instant circumstances. (D.I. 23 at 5–7).

■ In order to fall within the public policy exception to the at-will employment doctrine, a plaintiff must show (1) that the defendant's alleged conduct implicates a "public interest recognized by some legis-

---

**2.** To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

lative, administrative or judicial authority," and (2) "that the employee [occupied] a position with responsibility for advancing or sustaining that public interest." *Lord v. Souder*, 748 A.2d 393, 401 (Del.2000).

Defendant does not contend that Plaintiff fails to satisfy either of the above requirements.[3] Rather, Defendant contends that Delaware law does not recognize a breach of Covenant claim under the public policy exception, where, as here, a comprehensive anti-discrimination statute is available to protect Plaintiff. (D.I. 23 at 6) (citations omitted). The decisions cited by Defendant from this Court and from the Delaware Superior Court do support its contention. However, the Delaware Supreme Court recently held as a matter of first impression that a plaintiff can maintain a common law claim for breach of the Covenant due to discriminatory conduct, such as sexual harassment, despite the fact that said conduct is prohibited by both state and federal law. *Schuster v. Derocili*, 775 A.2d 1029, 2001 WL 682105, at *2–6 (Del. June 15, 2001). The Court finds this reasoning to be equally applicable to the instant circumstances, which involves retaliatory conduct against an employee who reported racially discriminatory conduct to his superiors. Therefore, the Court concludes that Plaintiff's breach of Covenant claim falls within the public policy exception to the at-will employment doctrine.[4]

For the reasons discussed, the Court concludes that Defendant's motion for summary judgment on Plaintiff's breach of Covenant claim should be denied.

### B. Punitive Damages

■ Defendant also contends that Plaintiff is precluded from recovering punitive damages on his breach of Covenant claim. (D.I. 23 at 8). Because a claim for breach of the Covenant is a derivative of a breach of contract claim, punitive damages are typically unavailable. *Pressman*, 679 A.2d at 445. The court in *Pressman* recognized the validity of some exceptions to this rigid rule, such as when the breach amounts to an independent tort, the breach is accompanied by fraudulent conduct, or the breach is made in bad faith in the insurance context. *Id.* at 445–46. The court nonetheless concluded that the plaintiff, who claimed that his supervisor engaged in a "retaliatory campaign" to get the plaintiff fired after the plaintiff questioned the supervisor's impartiality, could not recover punitive damages for his breach of Covenant claim. *Id.* at 438–39. Subsequent to *Pressman*, courts have held that punitive damages may be recovered for a breach of contract if the complained of conduct "is *similar in character* to an intentional tort." *Thurston v. Liberty Mut. Ins. Co.*, 16 F.Supp.2d 441, 448 (D.Del.1998)(emphasis added).

■ The Court predicts that, if the Delaware Supreme Court were confronted with the instant issue, it would allow Plaintiff to seek punitive damages. First, in concluding that sexual harassment fits

---

**3.** Title VII of the Civil Rights Act of 1964 and Title 19 of the Delaware Code establish that the complained of conduct is prohibited by a legislatively recognized public interest, and Plaintiff does occupy a position with responsibility for implementing this public policy due to the fact that he is "an alleged victim directly injured by the alleged public policy breach." *Schuster v. Derocili*, 775 A.2d 1029, 1038 (Del. 2001).

**4.** The Court also concludes that Plaintiff's breach of Covenant claim falls within the falsification of records exception to the at-will employment doctrine, and that, therefore, Plaintiff's breach of Covenant claim can proceed on that basis as well. *Schuster*, 775 A.2d 1029, 1039.

within the public policy exception to the at-will employment doctrine, the Delaware Supreme Court declared that Delaware has a "clear and firmly rooted public policy to deter, prevent, and *punish* sexual harassment in the workplace." *Schuster*, 775 A.2d 1029, 1036 (emphasis added). Obviously, allowing punitive damages in this context comports with the policy of punishing perpetrators of illegal employment discrimination. Second, although not an intentional tort in the conventional sense, the Court finds that intentional retaliatory conduct, such as the conduct alleged here, is sufficiently similar to an independent, intentional tort that punitive damages should be recoverable. Therefore, the Court concludes that Defendant's motion for summary judgment on Plaintiff's claim for punitive damages based on his breach of Covenant claim should be denied.

### C. Emotional Distress

Defendant contends that Plaintiff is precluded from recovering damages for emotional distress under his breach of Covenant claim. (D.I. 23 at 13). Since Plaintiff agrees that he will not pursue emotional distress damages on this claim, (D.I. 25 at 23), the Court will grant the motion as to this limited issue.

## II. Title VII and Section 1981

### A. Plaintiff's Claims Under Section 1981 and Section 1981a

■ Defendant contends that it is entitled to summary judgment on Plaintiff's claims under Sections 1981 and 1981a. (D.I. 23 at 7–8). Section 1981 states in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Essentially, Defendant contends that Plaintiff does not have standing to bring his Section 1981 claim because: (1) there is no evidence that Plaintiff was terminated because of his race, and (2) Section 1981 does not afford protection to Plaintiff because he is white. (D.I. 23 at 7–8).

■ First, retaliation claims under Section 1981 are cognizable. *Lafate v. Chase Manhattan Bank (USA)*, 123 F.Supp.2d 773, 782 (D.Del.2000). In order to prevail on a retaliation claim, a plaintiff need not prove that the complained of conduct was taken on account of the plaintiff's race, but rather, that it was taken on account of the plaintiff engaging in protected activity which, in this case, was Plaintiff complaining about Mr. Thompson's racially derogatory comments. *Id.* at 782–83. Moreover, the United States Supreme Court has held that white citizens can maintain Section 1981 retaliation claims. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 288–87, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). *See also Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1447 (10th Cir.1988)(same). Thus, the Court concludes that Plaintiff does have standing to bring his Section 1981 retaliation claim.

### B. The Merits of Plaintiff's Retaliation Claims

■ Since the Court concludes that Plaintiff does have standing to maintain his retaliation claims despite the fact that he is white, it now must assess the merits of these claims. A plaintiff can proceed under two theories in seeking to establish retaliation in violation of Title VII or Sec-

tion 1981 [5]: (1) a mixed motive theory, or (2) a pretext theory. *See Watson v. Southeastern Pa. Transp. Auth.,* 207 F.3d 207, 214 (3d Cir.2000); *Johnson v. E.I. DuPont de Nemours & Co.,* 60 F.Supp.2d 289, 293–94 (D.Del.1999)(citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)), *aff'd,* 208 F.3d 206 (3d Cir.2000). Defendant contends that Plaintiff has failed to adduce sufficient evidence to succeed under either theory, and thus, that Defendant is entitled to summary judgment. (D.I. 23 at 24).

### 1. Mixed Motive

■ To prevail on a retaliation claim under a mixed motive theory, a plaintiff must present direct evidence that the person who decided to terminate the plaintiff was motivated by an illegitimate criterion. *Childress v. Dover Downs, Inc.,* 2000 WL 376419, at *8 (D.Del. March 31, 2000).

■ Plaintiff contends that he has adduced sufficient direct evidence to support a mixed motive theory, specifically: that Mr. Thompson threatened to "get back at [Plaintiff]" after Plaintiff had reported Mr. Thompson's comments to Mr. Baylis, and that soon thereafter, Mr. Thompson "spearheaded" the effort to discharge Plaintiff. (D.I. 25 at 26). Defendant contends that this evidence is insufficient to submit a mixed motive theory to a jury because Mr. Thompson was not the person who decided to terminate Plaintiff. (D.I. 23 at 15). The Court agrees.

Plaintiff contends that Mr. Thompson was instrumental in the decision to terminate Plaintiff, and that Ms. Heyse claimed that Mr. Thompson "spearheaded the ef-

fort to eliminate" Plaintiff from his position with Defendant. (D.I. 25 at 26). However, Plaintiff fails to cite any evidence to support this contention. Rather, the only evidence that Mr. Thompson had any involvement in Plaintiff's termination is that he fabricated the grounds that ultimately led to Plaintiff's termination. Plaintiff admits that Mr. Thompson did not have the authority to terminate him and that the ultimate decision to terminate him was made by Mr. Kardon. (D.I. 23, Exh. A at 86). At his deposition, Mr. Kardon testified that his decision to terminate Plaintiff was based on the written statements by Mr. Thompson, Ms. Heyse, and Mr. Staffin, and on the fact that Plaintiff had acted inappropriately towards Ms. Heyse previously. (D.I. 23, Exh. G at 59–60). While Plaintiff has adduced indirect, circumstantial evidence that Mr. Kardon may have had impermissible motives for terminating him,[6] there is no direct evidence that Mr. Kardon terminated Plaintiff in retaliation for complaining about Mr. Thompson's comments. Therefore, the Court concludes that Plaintiff's claim cannot proceed on a mixed motive theory. *See Johnson,* 60 F.Supp.2d at 294 (holding that statements by non-decisionmakers cannot sustain a plaintiff's burden of proof for a mixed motive claim). *See also Walden v. Georgia–Pac. Corp.,* 126 F.3d 506, 512 (3d Cir.1997)(holding that mixed motive theory is only maintainable when "the evidence put forth by the plaintiff is so revealing of retaliatory animus that it is unnecessary to rely on the *McDonnell Douglas/Burdine* burden-shifting framework").

---

**5.** Title VII and Section 1981 discrimination and retaliation claims are analyzed under the same substantive standard. *See Olabode v. Hecht Inc.,* 1997 WL 805187 (E.D.Pa. Dec.30, 1997).

**6.** See Section II.B.2 below.

## 2. Pretext

Retaliatory discharge claims premised on a pretext theory are analyzed under the *McDonnell Douglas* burden-shifting framework. Under this framework, the plaintiff must first establish a prima facie case of retaliation. *Lafate,* 123 F.Supp.2d at 777 (citing *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997)). If the plaintiff satisfies the prima facie case, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the complained of conduct. *Id.* If the defendant meets this burden, then all presumptions drop from the case and the plaintiff must proffer sufficient evidence for the fact finder to conclude by a preponderance of the evidence that the defendant's articulated reason for its conduct is a mere pretext for unlawful retaliation. *Id.*

To establish a prima facie case of retaliation, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse,* 126 F.3d at 500. Defendant contends that Plaintiff has failed to adduce sufficient evidence to establish that: (1) Plaintiff was engaging in protected activity when he reported Mr. Thompson's comments to Mr. Baylis, and (2) Plaintiff's termination was causally connected to his protected activity. (D.I. 23 at 8, 17; D.I. 28).

In support of its first contention, Defendant notes that Mr. Thompson's comments were not deemed offensive to the African–American co-workers who overheard them. (D.I. 27 at 6)(citing D.I. 23, Exh. B). In order to be engaging in protected activity when complaining to supervisors about discriminatory conduct, a plaintiff does not need to prove that the conduct about which he complained of was actually in violation of anti-discrimination laws; rather, he only has to have a good faith, reasonable belief that the complained of conduct was unlawful. *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1085 (3d Cir.1996).

The Court concludes that the African–American co-workers' opinions do not conclusively prove that Plaintiff did not have a reasonable, good faith belief that Mr. Thompson's comments were racially derogatory. The African–American co-workers indicated that they did not interpret Mr. Thompson's comments to be derogatory, but that the comments could have been construed in such a manner. (D.I.23, Exh. B). Also, the DDOL advised Plaintiff to report the incident to his supervisor. (D.I. 25, Exh. A at 31). Based on this evidence, the Court concludes that the African–American co-workers' opinions do not preclude a reasonable jury from finding that Mr. Thompson's comments were intended to be derogatory.

Defendant also cites *Clark County School District v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) for the principle that Plaintiff could not have reasonably believed that Mr. Thompson's isolated comments amounted to a violation of Title VII and Section 1981. (D.I.28). In *Breeden,* the plaintiff was reviewing psychological evaluation reports of several job applicants with a male supervisor and a male co-worker. *Id.* at 1509. One of the applicant's reports disclosed the fact that he had once said to a female co-worker: "I hear making love to you is like making love to the Grand Canyon." *Id.* The supervisor read this comment out loud, looked at the plaintiff, and said: "I don't know what that means." *Id.* The male co-worker replied: "I'll tell you later," and both men chuckled. *Id.* The plaintiff later

complained about this interaction to another supervisor. *Id.* When the plaintiff was subsequently terminated, she brought a Title VII retaliation claim. *Id.*

The Supreme Court granted the defendant's motion for summary judgment because: "[n]o reasonable person could have believed that the single incident recounted above" amounted to a Title VII hostile work environment claim. *Id.* at 1510. The Court reasoned that it was a necessary part of her job to read and review sexually explicit statements such as those contained in the psychological reports, and the "isolated inciden[t]" at issue did not amount to such an abusive environment to be actionable. *Id.* Accordingly, the Court concluded that the plaintiff was not terminated for activity protected under Title VII. *Id.*

The Court concludes that the instant circumstances are distinguishable from those in *Breeden.* First, Plaintiff's job responsibilities did not require him to encounter discriminatory or abusive comments like the plaintiff's job in *Breeden* did. Second, the Court concludes that referring to African–Americans as "monkeys" is more reasonably deemed derogatory than was the interaction in *Breeden.* Third, Plaintiff was advised by the DDOL to report Mr. Thompson's comments to his supervisor. Based on this evidence, the Court concludes that it was reasonable for Plaintiff to believe that Mr. Thompson's comments were actionable under Title VII or Section 1981, and that he was engaging in protected activity when he reported them to Mr. Baylis.

██ The Court also concludes that Plaintiff has adduced sufficient evidence to satisfy the causation requirement of the prima facie case. The Third Circuit has stated that: "temporal proximity between the protected activity and the [termination] is sufficient to establish a causal

link. We have also held that the 'mere passage of time is not legally conclusive proof against retaliation.' " *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997) (citations omitted). Cases subsequent to *Woodson,* however, have limited this holding. *See, e.g., Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir.1997)(suggesting that timing alone is sufficient for establishing a causal connection only if the facts are "unusually suggestive" of retaliation). These cases mean that the analysis is fact sensitive, and the ultimate determination depends on "how proximate the events actually were, and the context in which the issue [arose]." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir.2000). Nevertheless, when the alleged retaliation occurs only a short time after the employer received notice of the employee's protected activity, courts are quick to draw an inference of causation. *See Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989)(holding that two days between notice of the protected activity and the retaliation led to an inference of causation). *See also Kachmar v. SunGard Data Sys.,* 109 F.3d 173, 178 (3d Cir.1997)(holding that four month time lapse between protected activity and adverse employment action does not automatically prohibit a finding of a causal connection).

██ In addition to timing, evidence of "intervening antagonism or retaliatory animus," or other circumstantial evidence can also allow for an inference of causation. *Farrell,* 206 F.3d at 280. In sum, the case law has "set forth no limits on what [courts can] consider" in determining whether the causation requirement has been satisfied. *Id.* at 281.

██ In the instant case, Plaintiff complained about Mr. Thompson's racially derogatory comments one month prior to his

termination. (D.I. 1 at ¶ 10; D.I. 25, Exh. A at 71). Thus, the temporal proximity between the protected activity and the termination supports an inference of causation. Furthermore, there is direct evidence of subsequent antagonism by Mr. Thompson when he threatened to "get back" at Plaintiff. While there is no direct evidence of any retaliatory intent by Mr. Kardon, there is sufficient circumstantial evidence to send the issue to a jury. For instance, Mr. Kardon completely ignored Plaintiff's denial that he had referred to Ms. Heyse in an offensive manner and he ignored Plaintiff's claim that Mr. Thompson had falsely accused Plaintiff in retaliation for Plaintiff's protected activity. (D.I. 23, Exh. A at 73). The Court concludes that this evidence sufficiently establishes a causal connection between Plaintiff's protected activity and Plaintiff's termination in order to satisfy the prima facie case requirement.

▇▇▇▇▇▇ Defendant next contends that, even if Plaintiff has established the prima facie case, Plaintiff has failed to adduce sufficient evidence to rebut Defendant's legitimate business reason for Plaintiff's termination—that he had referred to Ms. Heyse in an offensive manner. (D.I. 23 at 18). To defeat Defendant's motion, Plaintiff does not necessarily have to produce additional evidence to rebut Defendant's proffered reason; rather, all presumptions drop from the case at this point and Plaintiff's prima facie case evidence combined with a jury's disbelief of Defendant's proffered reason can be sufficient for Plaintiff to prevail on his retaliation claim. *Lafate,* 123 F.Supp.2d at 780 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

The Court concludes that Plaintiff casts sufficient doubt on the credibility of Defendant's proffered reason for Plaintiff's termination to defeat the instant motion.

The Court notes that the three written statements relied upon by Defendant in support of its proffered reason were all submitted by non-disinterested witnesses. The statement submitted by Mr. Thompson could easily be rejected by a reasonable jury in light of Mr. Thompson's threat to get even with Plaintiff. Ms. Heyse's statement could be discredited because she testified that, prior to Plaintiff's termination, Plaintiff had "conspired" against her to deprive her of commissions that she deserved and that she resented Plaintiff as a result. (D.I. 23, Exh. C at 17, 30). Lastly, Mr. Staffin's statement could be rejected because Mr. Staffin is a friend of Mr. Thompson who accompanied Mr. Thompson on his motorcycle trip through Trenton, New Jersey. (D.I. 23, Exh. A at 29). The Court concludes that this is sufficient evidence for a reasonable jury to conclude that the three written statements were a fabrication. Therefore, Defendant is not entitled to summary judgment on Plaintiff's pretext theory retaliation claim.

### C. Punitive Damages

▇▇▇▇ In his Complaint, Plaintiff seeks punitive damages for, among other things, Defendant's alleged concealment of Mr. Thompson's written statement from the DDOL during the DDOL's investigation of Plaintiff's retaliation claim. (D.I. 1 at ¶ 17). Defendant contends that there is no legal or factual basis for awarding Plaintiff punitive damages based on this alleged conduct. (D.I. 23 at 10–11).

▇▇▇▇ To recover punitive damages for a retaliation claim under Title VII or Section 1981, a plaintiff must prove that a defendant acted "with malice or with reckless indifference to the federally protected rights of [the plaintiff]." *Lafate,* 123 F.Supp.2d at 784 (citing *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)). Thus,

the issue is whether the withholding of relevant documents by an employer from an administrative investigation of discrimination charges is evidence that the employer maliciously or recklessly deprived an employee of his or her federally protected rights. Although the Third Circuit has not addressed the issue, the Court finds the reasoning employed by other circuit courts persuasive in concluding that such conduct does support a finding of punitive damages. *See Equal Employment Opportunity Comm'n v. WalMart Stores, Inc.*, 156 F.3d 989, 993 (9th Cir.1998)(holding that the employer's providing of false reasons for not hiring the plaintiff warranted the issue of punitive damages to be sent to the jury); *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 582 (7th Cir.1996) (same). The Court finds no reason to distinguish the instant case, which involves alleged intentional concealment of documents, from the above cases which involved affirmatively creating false reasons for termination. Accordingly, the Court concludes that Plaintiff may recover punitive damages based on Defendant withholding Mr. Thompson's written statement from the DDOL in an intentional or reckless manner.

Defendant contends that, even if punitive damages are legally recoverable for withholding documents from the DDOL, there is insufficient evidence that Defendant did this with the requisite state of mind. Specifically, Defendant contends that it did not cover-up the reason for Plaintiff's termination, which was because Plaintiff had referred to Ms. Heyse in an offensive manner, and that Mr. Kardon testified that all documents in Defendant's possession were provided to the DDOL. (D.I. 27 at 8, Exh. H at 77). However, Defendant does not claim that Mr. Thompson's statement was provided to the DDOL, and there is sufficient affirmative evidence that it was not provided. (D.I. 27, Exh. H; D.I. 25, Exh. H at 2). This omission is strong circumstantial evidence that Mr. Thompson's statement was intentionally withheld, when considering that Plaintiff contends Mr. Thompson is the person who sought to "get even" with Plaintiff.. Accordingly, the Court concludes that Plaintiff can recover punitive damages for the alleged concealment under the instant circumstances.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's motion for summary judgment insofar as Plaintiff seeks damages for emotional distress under his claim for breach of the implied covenant of good faith and fair dealing, and insofar as Plaintiff's retaliation claims are premised on a mixed motive theory. However, the Court will deny the motion in all other respects.

An appropriate Order will be entered.

## *ORDER*

At Wilmington this 14 day of August, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant, Martin Newark Dealership, Inc.'s Motion for Summary Judgment (D.I.23) is:

1. *GRANTED* insofar as Plaintiff seeks damages for emotional distress under his claim for breach of the implied covenant of good faith and fair dealing;

2. *GRANTED* insofar as Plaintiff's retaliation claims are premised on a mixed motive theory;

3. *DENIED* in all other respects.. 